**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARICELA CUEVAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:26-cv-09978** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **OPTUM SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | **Jury Trial Demanded** |
| | ) | |

---

## COMPLAINT

Plaintiff, Maricela Cuevas ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Optum Services, Inc. ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* ("ADA"), seeking redress for Defendant's disability-based discrimination, disability-based harassment, failure to accommodate Plaintiff's disability, and retaliation against Plaintiff for engaging in protected activity under the ADA.

2. This lawsuit further arises under the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 *et seq.* ("FMLA"), seeking redress for Defendant's retaliation against Plaintiff for using protected FMLA leave.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as the ADA and the FMLA are federal statutes.

4. Venue properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## ADMINISTRATIVE PREREQUISITES

5. All conditions precedent to suit under the ADA have occurred or been satisfied.

6. On or about April 17, 2026, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), attached hereto as Exhibit "A."

7. On or about August 5, 2026, the Equal Employment Opportunity Commission ("EEOC") issued, and Plaintiff received, a Notice of Right to Sue concerning that Charge, attached hereto as Exhibit "B."

8. Plaintiff filed this Complaint within ninety (90) days of her receipt of the EEOC's Notice of Right to Sue.

## PARTIES

9. Plaintiff, Maricela Cuevas, is an individual and resident of Cook County, Illinois.

10. Defendant, Optum Services, Inc., is a business entity with a business address located at 1 Health Drive, Eden Prairie, Minnesota 55344.

11. At all times relevant, Plaintiff was an employee and Defendant was an employer within the meaning of the ADA and the FMLA.

12. At all times relevant, Defendant employed at least fifteen (15) employees and was a covered employer under the ADA.

13. At all times relevant to Plaintiff's FMLA claims, Defendant was an employer within the meaning of the FMLA and employed fifty (50) or more employees within seventy-five (75) miles of Plaintiff's worksite.

## BACKGROUND FACTS

14. Plaintiff was employed by Defendant as a billing representative from on or about July 19, 2023, until her unlawful termination on or about April 8, 2026.

15. As a billing representative, Plaintiff's duties included but were not limited to continuous repetitive typing.

16. Plaintiff met the obligations of her job duties.

17. Plaintiff has carpal tunnel syndrome, a physical impairment that causes pain, strain, difficulty moving her thumb, and difficulty using her hands for repetitive typing and manual tasks.

18. Plaintiff's disability substantially limits one or more major life activities, including but not limited to performing manual tasks.

19. Regardless of Plaintiff's disability, she was able to perform the essential functions of her position with or without reasonable accommodation.

20. By virtue of the foregoing, Plaintiff is a qualified individual with a disability under the ADA.

21. Defendant knew of Plaintiff's disability because Plaintiff repeatedly informed her supervisor, Alka Amin, about her pain and functional limitations.

22. Defendant subjected Plaintiff to corrective discipline, written warnings, and termination because of Plaintiff's disability.

23. Defendant subjected Plaintiff to disability-based harassment through repeated disability-linked scrutiny, comments, and discipline concerning disability-related breaks, including being told to consider another job.

24. Plaintiff requested the reasonable accommodation of additional breaks or brief periods of rest for her hands, including flexibility to manage her symptoms.

25. Defendant failed to engage in the interactive process and failed to provide Plaintiff a reasonable accommodation.

26. Plaintiff engaged in protected activity under the ADA by requesting the reasonable accommodation of additional breaks or brief periods of rest for her hands, including flexibility to manage her symptoms.

27. Defendant knew that Plaintiff engaged in protected activity under the ADA.

28. After Plaintiff engaged in protected activity under the ADA, Defendant subjected

Plaintiff to corrective discipline, written warnings, and termination.

29. At all times relevant to Plaintiff's FMLA claims, Plaintiff had been employed by Defendant for at least twelve (12) months.

30. During the twelve (12) months preceding Plaintiff's need for leave, Plaintiff worked at least 1,250 hours for Defendant.

31. Plaintiff suffered from a serious health condition that qualified Plaintiff for FMLA leave.

32. Plaintiff provided Defendant sufficient notice of her need for FMLA leave.

33. After Plaintiff used protected FMLA leave, Defendant subjected Plaintiff to corrective discipline, written warnings, and termination.

34. Plaintiff worked in a fully remote position from Illinois.

35. In or around December 2024, Plaintiff developed carpal tunnel syndrome and underwent surgery on or about December 26, 2024.

36. As a result of her serious health condition, Plaintiff used FMLA leave.

37. Because of complications from surgery, Plaintiff remained out of work for several months and returned to work in or around April 2025.

38. Plaintiff remained able to perform the essential functions of her position with reasonable accommodation.

39. Plaintiff repeatedly informed Amin that continuous repetitive typing caused her pain and strain and requested additional breaks or flexibility to rest her hands and manage her symptoms.

40. Plaintiff sought minor adjustments that would permit her to sustain her performance, not a reduction in productivity expectations.

41. Defendant denied Plaintiff's request, informed her that she did not qualify for accommodations, offered no alternative accommodation, and did not meaningfully engage in the

interactive process.

42. Defendant required Plaintiff to continue working under the same conditions, which increased her pain and made it more difficult to sustain consistent performance.

43. In or around September 2025, Plaintiff's condition had worsened, including difficulty moving her thumb, and she continued requesting reasonable accommodation.

44. During this period, Amin told Plaintiff, in substance, that she should consider looking for another job if she could not keep up with the position's demands.

45. Shortly after Plaintiff requested reasonable accommodation, Defendant placed her on a corrective action plan in or around August 2025.

46. On or about September 9, 2025, Defendant issued Plaintiff a written warning for allegedly taking excessive breaks.

47. In or around October 2025, Plaintiff's grandmother died, and Plaintiff's long-term domestic partner of approximately twenty (20) years suffered a severe traumatic brain injury requiring intensive care and rehabilitation.

48. Plaintiff requested leave to care for her partner, was initially approved for intermittent leave, and received partial compensation.

49. During this leave episode, Amin questioned why Plaintiff expected her partner's condition to improve, stated in substance that brain injuries are permanent, and asked why no one else could care for him.

50. Defendant subsequently reversed or denied Plaintiff's leave, allegedly because of missing documentation, without clearly informing Plaintiff what documentation was required.

51. Defendant required Plaintiff to return to work earlier than anticipated, in or around the second week of November 2025.

52. On or about December 9, 2025, Defendant issued Plaintiff a final written warning for

allegedly taking excessive breaks and characterized her conduct as work avoidance.

53. Plaintiff disputed Defendant's allegations because her need for breaks related to her disability and denied accommodation, and other time discrepancies related to known system issues or were offset by additional work time.

54. On or about February 2, 2026, Plaintiff again requested at least two weeks of leave beginning on or about February 3, 2026, to care for her partner after he was transferred to a rehabilitation facility.

55. In response, Amin stated in substance, "Don't you already have this resolved?" and Plaintiff explained that her partner's condition was ongoing and lifelong.

56. Defendant ultimately approved Plaintiff for time off from approximately February 1, 2026, through March 7, 2026.

57. On or about March 31, 2026, Amin told Plaintiff that Defendant's contract was ending and that Plaintiff's role would transition to Quest Diagnostics effective on or about May 1, 2026.

58. On or about April 3, 2026, Plaintiff received a job offer from Quest Diagnostics.

59. At that time, Amin did not raise concerns about excessive breaks or alleged policy violations and instructed Plaintiff to look for and accept the offer.

60. On or about April 8, 2026, Amin terminated Plaintiff during a Zoom meeting and stated that the termination was for allegedly taking excessive breaks.

61. When Plaintiff requested specific examples or dates, Defendant provided no clear details or meaningful explanation and directed her to Human Resources.

62. Plaintiff denied taking unauthorized breaks and had repeatedly explained that her need for additional breaks related to her disability.

63. Defendant terminated Plaintiff after denying her requests for reasonable accommodation and disciplining her for conduct tied to her disability and accommodation need.

**COUNT I**
**Violation of the Americans with Disabilities Act**
**(Disability-Based Discrimination)**

64. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

65. Plaintiff was disabled within the meaning of the ADA and was qualified to perform the essential functions of her position with or without reasonable accommodation.

66. Plaintiff met the obligations of her job duties.

67. Defendant subjected Plaintiff to corrective discipline, written warnings, and termination because of Plaintiff's disability.

68. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff because of her disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.*

69. Defendant acted in willful or reckless disregard of Plaintiff's protected rights.

70. As a direct and proximate result, Plaintiff suffered and continues to suffer loss of employment, income, and benefits.

**COUNT II**
**Violation of the Americans with Disabilities Act**
**(Disability-Based Harassment)**

71. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

72. Defendant subjected Plaintiff to disability-based harassment, including repeated disability-linked scrutiny, comments, and discipline concerning disability-related breaks, including being told to consider another job.

73. The disability-based harassment was unwelcome and was subjectively and objectively offensive.

74. The disability-based harassment was severe or pervasive.

75. Defendant knew or should have known of the harassment and failed to take prompt

and appropriate corrective action.

76. By virtue of the conduct alleged herein, Defendant harassed Plaintiff because of her disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.*

77. Defendant acted in willful or reckless disregard of Plaintiff's protected rights.

78. As a direct and proximate result, Plaintiff suffered and continues to suffer injury for which legal or equitable relief is available.

**COUNT III**
**Violation of the Americans with Disabilities Act**
**(Failure to Accommodate)**

79. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

80. Plaintiff was a qualified individual with a disability.

81. Defendant was aware of Plaintiff's disability and need for reasonable accommodation.

82. Plaintiff requested the reasonable accommodation of additional breaks or brief periods of rest for her hands, including flexibility to manage her symptoms.

83. Plaintiff's requested accommodation would have enabled her to perform the essential functions of her position and would not have imposed an undue hardship on Defendant.

84. Defendant failed to engage in the interactive process and failed to provide Plaintiff a reasonable accommodation.

85. By virtue of the conduct alleged herein, Defendant failed to accommodate Plaintiff's disability in violation of the ADA, 42 U.S.C. § 12101 *et seq.*

86. Defendant acted in willful or reckless disregard of Plaintiff's protected rights.

87. As a direct and proximate result, Plaintiff suffered and continues to suffer loss of employment, income, and benefits.

**COUNT IV**
**Violation of the Americans with Disabilities Act**
**(Retaliation)**

88. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

89. Plaintiff engaged in protected activity under the ADA by requesting the reasonable accommodation of additional breaks or brief periods of rest for her hands, including flexibility to manage her symptoms.

90. Defendant knew that Plaintiff engaged in protected activity.

91. Defendant subjected Plaintiff to corrective discipline, written warnings, and termination.

92. Plaintiff's protected activity was a but-for cause of Defendant's adverse employment actions.

93. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff in violation of the ADA, 42 U.S.C. § 12203.

94. Defendant acted in willful or reckless disregard of Plaintiff's protected rights.

95. As a direct and proximate result, Plaintiff suffered and continues to suffer loss of employment, income, and benefits.

**COUNT V**
**Violation of the Family and Medical Leave Act**
**(FMLA Retaliation)**

96. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

97. Plaintiff was eligible for FMLA leave and provided Defendant notice of her need for leave.

98. Plaintiff engaged in protected activity by using FMLA leave.

99. Defendant knew that Plaintiff used protected leave.

100. After Plaintiff used protected leave, Defendant subjected Plaintiff to corrective discipline, written warnings, and termination.

101. Plaintiff's use of FMLA leave was a negative factor in Defendant's adverse actions.

102. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff for exercising her FMLA rights in violation of 29 U.S.C. § 2615.

103. Plaintiff suffered damages recoverable under 29 U.S.C. § 2617.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

a. Back pay and other lost compensation;

b. Payment of interest on all recoverable back pay and other monetary losses;

c. Front pay;

d. Lost employment benefits;

e. Punitive damages to the extent authorized by law;

f. Liquidated damages under the FMLA;

g. Appropriate declaratory and equitable relief;

h. Reasonable attorneys' fees and costs to the extent authorized by law;

i. Prejudgment and post-judgment interest to the extent authorized by law; and

j. Any other relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 19, 2026.

***/s/ Kelly Dean Pearce, Esq.***

Kelly Dean Pearce, Esq.
Yasmeen Elagha, Esq.
Mohammed O. Badwan, Esq.
Atlas Law Center, Ltd.
2500 South Highland Avenue,
Suite 200,
Lombard, Illinois 60148
Phone (630) 575 - 8181
Fax (630) 575 – 8188
dpearce@atlaslawcenter.com
yelagha@atlaslawcenter.com
mbadwan@atlaslawcenter.com
*Attorneys for Plaintiff*